UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANGELA REDEL GOMEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:10-CV-0381-B |
| | § | |
| WELLS FARGO BANK, N.A. and | § | |
| BARRETT DAFFIN FRAPPIER | § | |
| TURNER & ENGEL, LLP, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Wells Fargo Bank, N.A.'s Partial Motion to Dismiss Plaintiff's Original Petition (doc. 3). For the reasons stated below, the Court finds the Motion should be and hereby is **GRANTED in part and DENIED in part** (doc. 3).

### I.

### BACKGROUND[1]

Plaintiff Angela Redel Gomez ("Gomez") is the record owner and resident of a house located in Dallas County, Texas (the "Property"). (Def.'s Notice of Removal at Ex. C-1 ("Pl.'s Original Pet.") ¶¶ 2, 8.) Wells Fargo is the mortgagee of the note and deed of trust associated with the Property. (*Id.* at ¶ 9.) Wells Fargo also acts as the mortgage servicer. (*Id.*) Gomez's husband

---

[1] The Court takes its factual account from the allegations contained in Plaintiff's Original Petition and Application for Temporary Restraining Order and Temporary Injunction ("Pl.'s Original Pet.") (Doc. 1-6). *See, e.g.*, *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 725 (5th Cir. 2002) (stating that when reviewing a motion to dismiss under Rule 12(b)(6), "all facts pleaded in the complaint must be taken as true.").

separated from Gomez in May 2009, leaving Gomez with one income to pay the mortgage on the Property. (*Id.* at ¶ 10.) In July 2009, Gomez's mortgage payment on the Property increased from $1,823.89 to $4,512.22 due to escrow shortages. (*Id.* at ¶ 11.)

In August 2009, Gomez began loan modification negotiations with Wells Fargo. (*Id.* at ¶ 12.) On August 17, 2009, an agent of Wells Fargo told Gomez to discontinue making mortgage payments. (*Id.*) The agent told Gomez she was pre-approved for her requested loan modification and would need only to deliver the appropriate documentation. (*Id.*) The agent also told her that her husband's signature was not needed for approval of the loan. (*Id.*) On October 12, 2009, Gomez asked Wells Fargo about the status of her application and learned she was denied because the application did not contain her husband's signature. (*Id.* at ¶ 13.) Gomez re-submitted her initial paperwork with her husband's signature. (*Id.*)

Gomez received a letter from Wells Fargo dated October 23, 2009, denying her requested loan application. (*Id.* at ¶ 14.) When Gomez contacted Wells Fargo for an explanation, Wells Fargo told Gomez that they denied her application because Wells Fargo was unable to contact her for approval to set up an escrow on her account. (*Id.*) However, Gomez did not receive a letter, email, telephone call, or any other correspondence from Wells Fargo between the time Gomez submitted her application and the time Wells Fargo denied her application. (*Id.*) Wells Fargo told Gomez to reapply, and Gomez reapplied for a loan modification with Wells Fargo. (*Id.*)

In a letter dated November 12, 2009, Wells Fargo denied Gomez's application for a loan modification because Wells Fargo considered the debt of both Gomez and her husband, while only considering the income of Gomez. (*Id.* at ¶ 15.) Agents of Wells Fargo had previously told Gomez several times that only Gomez's debt would be considered during the loan application process. (*Id.*)

On November 19, 2009, in a phone conversation with Wells Fargo, Gomez reapplied for a loan modification. (*Id.*)

Barrett, Daffin, Frappier, Turner & Engel, L.L.P. ("Barrett") is a representative of Wells Fargo. (*Id.* at ¶¶ 4, 16.) In a letter dated November 18, 2009, Barrett notified Gomez that her loan on the Property was in default, and Wells Fargo had elected to accelerate the maturity of the debt. (*Id.* at ¶ 16.) Barrett's letter also included a notice of a substitute trustee sale for the Property scheduled for January 5, 2010. (*Id.*) Gomez did not receive any notice of intent to accelerate. (*Id.*) Nor had Gomez received any prior indication that her loan was in default. (*Id.*) On January 5, 2010, the substitute trustee sold the Property at a foreclosure sale to Wells Fargo, the beneficiary under the deed of trust. (*Id.* at ¶ 17.)

Gomez filed an Original Petition and Application for a Temporary Restraining Order (the "Petition") on January 21, 2010, to prevent Wells Fargo from taking possession of the Property. (*Id.* at ¶¶ 25-28.) Gomez filed the Petition in the 44th Judicial District of the District Court for Dallas County, Texas. In addition to seeking a restraining order, the Petition asserted claims against Wells Fargo and Barrett for violations of the Texas Property Code, the Texas Deceptive Trade Practices Act, and the Texas Debt Collection Act. (*Id.* at ¶¶ 18-24.) Wells Fargo timely removed the case to this Court on March 2, 2010. (Def.'s Notice of Removal 1.) On March 2, 2010, Wells Fargo filed the instant Partial Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. The Court now turns to the merits of its decision.

## II.

## LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

In analyzing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "A motion to dismiss under Rule 12(b)(6) is 'viewed with disfavor and is rarely granted.'" *Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004) (quoting *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)). A Rule 12(b)(6) motion to dismiss should be granted only if the complaint does not include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). However, a complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). The Court's review is limited to the allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

### B. The Texas Deceptive Trade Practices Act

The Texas Deceptive Trade Practices Act ("DTPA") grants consumers a cause of action for another's false, misleading, or deceptive acts or practices.[2] Tex. Bus. & Com. Code § 17.50(a)(1). The elements of a DTPA claim are as follows: "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constitute a producing cause of the consumer's damages." *Doe v. Boys Club of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995); *see* § 17.50(a)(1). To establish consumer status under the DTPA, a plaintiff must be "an individual . . . who seeks or acquires by purchase or lease, any goods or services . . . ." § 17.45(4). In addition, "the goods or services purchased or leased must form the basis of the complaint." *Sherman Simon Enters., Inc. v. Lorac Serv. Corp.*, 724 S.W.2d 13, 15 (Tex. 1987). The question of whether a party is a consumer is a question of law. *Marketic v. U.S. Bank Nat'l Ass'n*, 436 F. Supp. 2d 842, 854 (N.D. Tex. 2006).

**C. The Texas Debt Collection Act**

The Texas Debt Collection Act (the "Collection Act") provides a "state law remedy for wrongful debt collection actions." *Cushman v. GC Services, L.P.*, 657 F. Supp. 2d 834, 840 (S.D. Tex. 2009). The Act is designed to "prevent creditors from preying upon a consumer's fear and ignorance of the law to pursue allegedly delinquent debts." *Brown v. Oaklawn Bank*, 718 S.W.2d 678, 680 (Tex. 1986). Specifically, the Act provides that "[i]n debt collection, a debt collector may not use threats, coercion, or attempts to coerce that. . . threaten[]to take an action prohibited by

---

[2]The DTPA, in relevant part, states the following: "A consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish: (1) The use or employment by any person of a false, misleading, or deceptive practice that is . . . enumerated in [§ 17.46(b)]; and relied on by a consumer to the consumer's detriment." Tex. Bus. & Com. Code § 17.50(a)(1).

law." Tex. Fin. Code § 392.301(a)(8).[3] The Act also prohibits debt collectors from making fraudulent, deceptive, or misleading representations that "represent[] falsely the status or nature of services rendered by the debt collector or the debt collector's business." § 392.304(a)(14). Although a violation of the Act "is a 'deceptive trade practice' under the DTPA, "a party may pursue a claim under the Act without also pursuing a claim under the DTPA. *See Eads v. Wolpoff & Abramson, LLP*, 538 F. Supp. 2d 981, 989 (W.D. Tex. 2008)(quoting § 392.404); *see also Cushman*, 657 F. Supp. 2d at 842, 846 (holding plaintiff was not a consumer and thus lacked standing under the DTPA, but plaintiff had standing to bring a claim under the Texas Debt Collection Act).

## III.

## ANALYSIS

Wells Fargo's Partial Motion to Dismiss under Rule 12(b)(6) moves to dismiss Gomez's claims under the DTPA and the Collection Act. The Court will consider each issue in turn.

### A. Violation of the Texas Deceptive Trade Practices Act

Wells Fargo contends Gomez fails to state a claim pursuant to the DTPA because Gomez is not a consumer. (Def.'s Partial Motion to Dismiss 4-6.) Wells Fargo argues Gomez does not qualify as a consumer because Gomez was attempting to modify an existing mortgage, and borrowing money does not constitute a good or service under the DTPA. (*Id.*) Wells Fargo further argues that even if Gomez was purchasing financial services from Wells Fargo, any services that Wells Fargo provides in connection with a mortgage are only incidental services to facilitate the loan. (*Id.* at 6.)

---

[3] The Collection Act defines "debt collection" is the "action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due to a creditor." § 392.001(5). "Consumer debt" is an obligation "primarily for personal, family, or household purposes and arising from a transaction." § 392.001(2).

Therefore, Wells Fargo contends that Gomez is not purchasing any good or service as required to establish consumer status under the DTPA. (*Id.* at 4-6.)[4]

A party who borrows money may not satisfy the first requirement for consumer status under the DTPA because money is not a "good" or a "service."[5] *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 174 (Tex. 1980). Thus, a party who "seeks only money in a transaction is not a consumer" under the DTPA. *Id.* at 175-76; *see e.g.*, *Maginn v. Norwest*, 919 S.W.2d 164, 167 (Tex. App.–Austin 1996, no writ) (holding party was not a consumer where purpose of transaction was to obtain only a mortgage loan). However, when a party obtains a loan "inextricably intertwined" in the purchase or lease of a good or service, then that party may qualify as a consumer. *Knight v. Int.'l Harvester Credit Corp.*, 627 S.W.2d 382, 389 (Tex. 1982); *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 707 (Tex. 1983) (holding party was a consumer when party's mortgage loan was intertwined with contractor's agreement to build a house). The determining factor is whether the purchase or lease of a good or service was "an objective of the transaction, not merely incidental to it." *Fed. Deposit Ins. Corp. v. Munn*, 804 F.2d 860, 865 (5th Cir. 1986). As such, to hold a creditor liable under the DTPA, the creditor must be connected with either "the actual sales transaction or with a deceptive act related to financing the transaction" of goods or services. *Home Sav. Ass'n v. Guerra*, 733 S.W.2d 134, 136 (Tex. 1987).

In the case at bar, Gomez sought to renegotiate a loan for her current house. (Pl.'s Original Pet. ¶¶ 12-15.) Gomez was not seeking a loan to purchase any other good or service. (*Id.*) Nor was

---

[4]Gomez did not file a response to Wells Fargo's Partial Motion to Dismiss.

[5]DTPA defines "goods" as "tangible chattels or real property purchased or leased for use." § 17.45(1). DTPA defines "services" as "work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods." § 17.45(2).

Gomez seeking to purchase goods or financial services from Wells Fargo. Gomez was only seeking to borrow money to avoid repossession of a house. *See Riverside*, 603 S.W.2d at 173. Thus, because Gomez was attempting to only borrow money and not purchase a good or a service, Gomez does not satisfy the requirements for consumer status under the DTPA. Therefore, this Court finds that Gomez has failed to state a claim pursuant to the Texas Deceptive Trade Practices Act. Accordingly, to the extent Wells Fargo seeks dismissal of Gomez's claim under the DTPA, Wells Fargo's Motion to Dismiss is **GRANTED.**

### B. Violation of the Texas Debt Collection Act

Wells Fargo further contends Gomez's claim under the Collection Act should be dismissed because Gomez does not properly allege in her Petition that Wells Fargo was a "debt collector" under the Collection Act. (Def.'s Partial Motion to Dismiss 6-8.) Wells Fargo additionally argues that Gomez did not allege any facts that would support a claim against Wells Fargo for violations of § 392.301(a)(8) or § 392.304(a)(14) of the Collection Act. (*Id.*)

To prevail under the Collection Act, "the claimant must prove that the defendant was a debt collector." *Catherman v. First State Bank of Smithville, Tex.*, 796 S.W.2d 299, 302 (Tex. App.–Austin 1990, no writ). The Collection Act defines a debt collector as a person who "directly or indirectly engages in debt collection . . . ." § 392.001(6). Gomez alleges that Wells Fargo is the mortgagee of Gomez's note and deed of trust associated with Gomez's house. (Pl.'s Original Pet. ¶ 9.) Gomez also alleges that Wells Fargo mailed Gomez a letter indicating Wells Fargo had elected to accelerate the maturity of the debt and had scheduled a trustee sale of the Property for January 5, 2010. (*Id.* at ¶ 16.) Gomez is therefore alleging that Wells Fargo attempted to collect its own debt. A debt collector includes not only collection agencies, but also "entities attempting to collect their own

debts." *Monroe v. Frank*, 936 S.W.2d 654, 660 (Tex. App.–Dallas 1996, writ dism'd w.o.j.); *Waterfield Mortgage Co. v. Rodriguez*, 929 S.W.2d 641, 644-645 (Tex. App.–San Antonio 1996, no writ) (holding mortgage company violated Texas Debt Collection Act). Thus, Gomez alleges sufficient facts that Wells Fargo is a debt collector.

To state a claim pursuant to § 392.301(a)(8), Gomez needs to allege that Wells Fargo not only is a debt collector, but also had threatened to take an action prohibited by law in the process of debt collection. *See* § 392.301(a)(8); *see also Harding v. Regent*, 347 F. Supp. 2d 334, 337 (N.D. Tex. 2004) (stating a debt collector's letter to the debtor sufficiently states a claim under § 392.301(a)(8) where the letter allegedly included an inappropriate or erroneous deadline for determining the debtor's outstanding balance). The Court has already found that Gomez sufficiently alleged facts that Wells Fargo is a debt collector. Notably, Texas Property Code § 51.002(d) prohibits acceleration of a real estate note without the requisite notice of intent to accelerate and grace period to cure. Tex. Prop. Code § 51.002(d). Gomez alleges that Wells Fargo sent a letter notifying Gomez that a trustee would sell Gomez's house, without providing Gomez proper notice of intent to accelerate the note. (Pl.'s Original Pet. ¶¶ 16, 18-19.) Therefore, the Court concludes that Gomez has alleged sufficient facts to state a claim pursuant to § 392.301(a)(8).

To state a claim pursuant to § 392.304(a)(14), Gomez needs to allege the following: Wells Fargo is a debt collector; Wells Fargo used false, deceptive, or misleading representations; and Wells Fargo represented falsely the status or nature of its services or business. *See* § 392.304(a)(14). Gomez alleges that Wells Fargo told Gomez to discontinue making mortgage payments, and that her husband's signature on the loan modification application was not required. (Pl.'s Original Pet. ¶¶ 12-13.) Gomez also contends that Wells Fargo failed to provide

a proper notice of acceleration on her debt. (*Id.* at ¶¶ 16, 18-19.) Furthermore, Gomez alleges that Wells Fargo told Gomez that the loan modification process would assess only Gomez's debt, but then denied Gomez's application because Wells Fargo considered the debt of both Gomez and her husband, while only considering the income of Gomez. (Pl.'s Original Pet. ¶¶ 12-13.) These allegations, if true, may represent a false representation of the status or nature of a debt collector's services pursuant to § 392.304(a)(14). Accordingly, the Court finds Gomez alleges sufficient facts to state a claim pursuant to § 392.304(a)(14). As such, to the extent Wells Fargo seeks dismissal of Gomez's claims under the Collection Act, Wells Fargo's Motion is **DENIED**.

V.

CONCLUSION

The Court finds Wells Fargo's Partial Motion to Dismiss should be and hereby is **GRANTED in part** and **DENIED in part**. To the extent the Motion seeks dismissal of Gomez's claims under the DTPA, the Motion is **GRANTED**. However, to the extent the Motion seeks dismissal of Gomez's claims under the Collection Act, the Motion is **DENIED**.

SO ORDERED.

DATED July 21, 2010

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE